## No. 3585.

### (Court of Appeal, Parish of Orleans.)

## KENTUCKY REFINING CO. vs. LANCASTER COTTON OIL CO.

Appeal from Civil District Court, Division "C."

H. H. Hall, for Plaintiff and Appellant.

W. S. Parkerson, for Defendant and Appellee.

1. Where a non-resident is brought into Court through attachment of his property, such attachment is the foundation of the suit and is substituted by service standing in lieu of citation in ordinary suits.

2. Where the attachment falls merely because the suit failed after trial on the merits, no damages can be allowed which could not be in any ordinary suit.

3. Attorney's fees cannot be recovered where no distinct service are rendered in dissolving the writ, and where the dissolution is the natural result of trial on the merits.

4. The other issues are of fact only.

DUFOUR, J. The plaintiff, a corporation of the State of Kentucky, took out an attachment against the defendant, a corporation of the State of Texas, claiming the sum of $918.33-100 for the use and detention by defendant of certain tank cars belonging to plaintiff, and, in execution of said writ, seized certain oil contained in such cars and alleged to be defendant's property.

The facts leading up to this litigation are substantially as follows:

The Pelican Oil Co., of Waxahatchie, Texas, bought on January 13th, 1903, of the Lancaster Cotton Oil Co., of Lancaster, Texas, ten tanks of prime crude cotton seed oil, buyer's option as to routing and sight draft, on buyer, bill of lading attached, tank cars to be furnished by buyers.

On February 24th, 1903, the Planter's Cotton Oil Co. sold to the Wills Point Cotton Oil Co. three tanks of said cotton seed oil on the following terms: "buyer's routing, buyer furnishing tank cars, shipment from Lancaster, Texas, tanks to be forwarded from Louisville, Ky.," during February, 1903, sight draft on buyer with bill of lading attached."

The Wills Co. bought the three tanks from the Planter's Co. in order to fill a contract it had made with the Kentucky Refining Co., of Louisville, Ky., and notice was given to the Lancaster Co. of the re-sale, and instructions to the latter to load and ship to Louisville three tank cars to be furnished by the Kentucky Co.

The cars were duly loaded by the Lancaster Co., which thereupon, in accordance with instructions received from Wills Point Co., and with the terms of its contract of sale, drew three drafts upon the Kentucky Co.

These were returned unpaid with the memorandum endorsed: "should be drawn by Wills Point Cotton Oil Co., do not recognize Lancaster."

The Wills Point Co. then drew in favor of the Lancaster Co. on the Kentucky Co., with bills of lading attached, and payment was again refused.

The reasons assigned for such refusal by the plaintiff are that, "the first was refused because the plaintiff's contract was with the Wills Point Co., and not with the Lancaster Co., which drew the drafts, it did not know the Lancaster Co. in its contract. The other drafts were refused because the Wills Point Co., which drew them had formally declined to arbitrate certain differences and to pay the plaintiff certain amounts under previous contracts of recent dates, and made about the time that this contract was entered into."

When confronted with the refusal to pay the drafts, the Wills Point Co., Planter's Co., and Lancaster Co., after having stopped

the cars in transit, agreed to dispose of the oil in this city. Before this was done, the present attachment was taken.

It is useless to go into the mass of details presented by the testimony, the salient points stated are sufficient for our purpose.

It is not clear what theory the plaintiff can now make a claim against the defendant for the use of the cars and seize the latter's property, when at first it denied any knowledge of or privity of contract with it, and claimed that the contract was solely with the Wills Point Co.

If so, the suit would have been against the latter: To refuse payment of the price and insist upon getting the property by quibbling with words in order to shift position as occasion might require, is a species of commercial legerdemain which courts do not view with favor.

If the oil seized belonged to the Lancaster Co., the seizure was unwarranted as that company was under no obligation to part with its property without receiving the price; if, on the other hand, it belonged to Wills Point Co., it could not be seized as belonging to Lancaster, in order to enforce a debt alleged to be due by Wills Point Co.

There is no error in the judgment rejecting plaintiff's demand, and dissolving the writ, but it was error to allow damages, whether as attorney's fees or otherwise.

Where a non-resident is brought into court through his property, the attachment is the foundation of the suit and is substituted service standing in lieu of citation in ordinary suits. The attachment falls merely because the suit falls after trial on the merits, and no damages can be allowed which could not be in any ordinary suit; this is particularly true as to attorney's fees where no distinct services are rendered in dissolving a writ, and where dissolution is the natural result of trial on the merits.

12 An. 711, Nulty vs. Jung, No. 3429, of our docket.

The amount claimed as expenses by Rea, who came to New

Orleans to sell the oil, cannot in our view be recovered; he came here before the attachment to secure the oil in the cars, which had been stopped in transit, and to sell the same in accordance with the tri-partile agreement referred to already. His presence was not made necessary by plaintiff's course, as under the agreement a local broker could have accomplished the same result. Such damage is rather remote than proximate.

We have carefully weighed the charges of malice, and are not inclined to think that any has been shown. At that stage of the proceeding—when the Kentucky Refining Co. refused to allow a sale of the oil to the Union Oil Co. of this City, it was anxious to get rental for its cars, just as Lancaster Co. was anxious to get a purchaser for its oil.

The great disparity between the pleadings and the evidence have led us to think that imperfect information and not malice prompted the attachment, as is not infrequent in cases like this where both litigants are non-residents.

Judgment on the main demand affirmed, and judgment on reconventional demand reversed and said reconventional demand rejected, plaintiff to pay costs of lower court, and defendant to pay costs of appeal.